UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

OMAR XAVIER LAWRENCE,

    Petitioner,

v.                                            Case No. 8:16-cv-2327-T-33MAP

SECRETARY, DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

## ORDER

Omar Xavier Lawrence, a Florida inmate, filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254.  (Doc. 1.)  He challenges his convictions entered by the circuit court for the Sixth Judicial Circuit, in and for Pinellas County.  Respondent filed a response, which does not challenge the petition's timeliness.  (Doc. 10.)  Lawrence filed a reply.  (Doc. 15.)  Upon consideration, the petition is denied.

## PROCEDURAL HISTORY

Lawrence was convicted after a jury trial of one count of first degree murder with a firearm (count one) and one count of attempted second degree murder with a firearm (count two).  (Doc. 12, Ex. 11, pp. 101-02.)  The state trial court sentenced him to life in prison on count one, and 25 years in prison on count two.  (Doc. 12, Ex. 25, pp. 292-93.)  The state appellate court *per curiam* affirmed.  (Doc. 12, Ex. 5.)

## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this

proceeding. *Wilcox v. Florida Dep't of Corr.,* 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied,* 531 U.S. 840 (2000). Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d), which sets forth a highly deferential standard for federal court review of a state court adjudication, states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. . . . Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling

on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that [the federal court is] to decide."). Lawrence bears the burden of overcoming by clear and convincing evidence a state court factual determination. 28 U.S.C. § 2254(e)(1).

The purpose of federal review is not to re-try the case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Cone,* 535 U.S. at 693. As Lawrence raises claims of trial court error in his habeas petition, the relevant state court decision is the state appellate court's *per curiam* affirmance on direct appeal. Although issued without discussion, the state appellate court's decision warrants deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore,* 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied,* 278 F.3d 1245 (2002). *See also Richter,* 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

## DISCUSSION

**Grounds One and Three**

In Ground One, Lawrence alleges that the trial court erred in not allowing him to impeach prosecution witness Andre Hoston with a prior inconsistent statement, in violation of his Fifth, Sixth, and Fourteenth Amendment rights. In Ground Three, he contends that the trial court erred by failing to allow him to confront Hoston "with evidence Hoston provided false information by way of a written statement to law enforcement concerning his name, address, [and] social security number," contrary to *Crawford v. Washington*, 541 U.S. 36 (2004). (Doc. 1, p. 12.)

Lawrence's claims are barred from review. A federal habeas petitioner must exhaust his federal claims in state court before presenting them in his petition. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court and alerts that court to the federal nature of the claim. 28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

Lawrence did not present the federal nature of the claims to the state court on direct appeal. (Doc. 12, Ex. 2, pp. 22-33, 36-38.) He argues to the contrary in his reply, asserting that he alleged a "due process violation" and that Florida's Evidence Code is "patterned after the Federal Rules of Evidence." (Doc. 15, pp. 2, 8.) However, Lawrence in his appellate brief did not specifically allege a violation of his federal rights, cite any federal decisions, or refer to any federal constitutional provisions. (Doc. 12, Ex. 2, pp. 22-33, 36-38.) Instead, he relied solely on state law. (*Id.*) Accordingly, the manner in which he presented his arguments did not alert the state appellate court that he intended to bring

federal constitutional claims. *See Pearson v. Sec'y, Dep't of Corr.*, 273 Fed. App'x 847, 849-50 (11th Cir. 2008) ("The exhaustion doctrine requires the petitioner to 'fairly present' his federal claims to the state courts in a manner to alert them that the ruling under review violated a federal constitutional right.") (citing *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995)); *Zeigler v. Crosby*, 345 F.3d 1300, 1307 (11th Cir. 2003) ("To present a federal constitutional claim properly in state court, 'the petitioner must make the state court aware that the claims asserted present federal constitutional issues.'") (quoting *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998)).

Lawrence cannot return to state court to file an untimely, successive direct appeal. *See* Fla. R. App. P. 9.140(b)(3) (a defendant must appeal a final judgment within 30 days following rendition of a written order imposing sentence). Accordingly, his claims are procedurally defaulted. *See Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001) (the doctrine of procedural default provides "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established."). Lawrence does not argue or assert that either exception applies to overcome the default. Therefore, his claims are barred from review.

**Ground Two**

The United States Supreme Court has held that striking potential jurors "solely on account of their race" violates the Equal Protection Clause. *Batson v. Kentucky*, 476 U.S. 79, 89 (1986). Lawrence claims that the trial court violated his Fifth, Sixth, and Fourteenth Amendment rights during jury selection by granting the prosecution two peremptory strikes that were based on prospective jurors' race. One individual in question, prospective juror

18, stated during *voir dire*:

> DEFENSE COUNSEL]: [ ] [Prospective juror 18]?
>
> PROSPECTIVE JUROR [18]: Yes, sir.
>
> [DEFENSE COUNSEL]: How do you feel about the presumption of innocence? Do you think that's the way it ought to be?
>
> PROSPECTIVE JUROR [18]: That's the way it is.
>
> [DEFENSE COUNSEL]: Well, sometimes things are what they are, but we don't agree that's the way it ought to be. What do you think?
>
> PROSPECTIVE JUROR [18]: Well, you know, that's the law. I accept the law.
>
> [DEFENSE COUNSEL]: All right. We've had a little bit of a discussion here about being jurors and what you'd have to do as far as coming up with what the facts show and what they don't show. Do you feel like you're up to the task?
>
> PROSPECTIVE JUROR [18]: Yes.
>
> [DEFENSE COUNSEL]: You don't sound very enthusiastic?
>
> PROSPECTIVE JUROR [18]: I just don't know. I've got a lot of personal stuff. You know, I'm black and he's black. Originally, that was supposedly true, you know, about the history where race is concerned. I'm intuitive here. I know that holds true. I'm being honest.
>
> [DEFENSE COUNSEL]: All right. Well, you recall [the prosecutor] talking about one of the most important things that we rely on the jurors, is that they bring their common sense, right?
>
> PROSPECTIVE JUROR [18]: Right.
>
> [DEFENSE COUNSEL]: And common sense is, I guess, a combination of everything you've seen, heard, learned, the hard lessons, the easy lessons, everything that's happened to us in the course of our lives, right?
>
> PROSPECTIVE JUROR [18]: Right.
>
> [DEFENSE COUNSEL]: We want you to bring that in here because that helps them in analyzing the witnesses and the evidence.

PROSPECTIVE JUROR [18]: Right.

[DEFENSE COUNSEL]: Okay. So, you know, I don't think you need to be afraid of your perspective. That's the part of your life that you're supposed to bring with you, right?

PROSPECTIVE JUROR [18]: Right.

[DEFENSE COUNSEL]: Okay. Now, I know you've heard the words fair and impartial dozens of times today, but you've brought up the fact that you're black and Mr. Lawrence is black.

PROSPECTIVE JUROR [18]: Right.

[DEFENSE COUNSEL]: Do you feel that because of that, that you, I guess do you feel that that would cause you, perhaps, not to be able to be fair to the State of Florida?

PROSPECTIVE JUROR [18]: I don't think it would. I'm going to be honest because of where I come from. Again, it's going to be a problem based on my home, and my religion, and my relationship with my people.

[DEFENSE COUNSEL]: Understood. And, of course, not having heard any of the witnesses, not having heard any of the testimony, don't you agree that it's difficult to assess what problems you may or may not have if you try to decide what really happened, right?

PROSPECTIVE JUROR [18]: Exactly.

[DEFENSE COUNSEL]: Okay.

THE COURT: Excuse me. I want to jump in here a little bit. Okay. [Prospective juror 18], you raised an issue that I certainly hear, and I think I have some basic understanding of, but it also causes me the need to ask you some more questions. Okay?

PROSPECTIVE JUROR [18]: Yes, ma'am.

THE COURT: All right. So, you stated something that you and I can easily observe, and since you're an African American, and so is Mr. Lawrence. I don't ask you to leave your common sense or your life experiences at the door. Do you understand that?

PROSPECTIVE JUROR [18]: Yes.

THE COURT: However, the law says that both sides are entitled to jurors who can decide this case solely based on the evidence introduced in the courtroom and the law as I give it to you.

One way of saying that, is that obviously we can't have a jury that's going to decide one way because they're white, and another way because they're black, or vice versa. Are you with me?

PROSPECTIVE JUROR [18]: Yes.

THE COURT: Okay. So I'm not asking you to set aside anything about your identity as an African American male, but I do need to know if you can assure me that you can follow the law in this case, and decide this case based on the evidence as it is admitted here, and the law as I give it to you. Can you do that?

PROSPECTIVE JUROR [18]: Your Honor, I'm going to be extremely honest - -

THE COURT: Yes, sir.

PROSPECTIVE JUROR [18]: - - in the fact that I am the sum total of my life experiences.

THE COURT: Yes, sir.

PROSPECTIVE JUROR [18]: I can't conform [sic] myself from those things.

THE COURT: Yes, sir.

PROSPECTIVE JUROR [18]: For a point in time for any particular objective.

THE COURT: Yes, sir.

PROSPECTIVE JUROR [18]: I'm still going to be who I am today.

THE COURT: Yes, sir.

PROSPECTIVE JUROR [18]: I will do the very best I can on any given task, but, you know.

THE COURT: Okay. Well, let me put it this way. You know, when we talked about law enforcement officers.

PROSPECTIVE JUROR [18]: Yes.

> THE COURT: And one of the things [the prosecutor] said is, can you weigh, and I think I said something about it at that point, can you weigh the testimony of the law enforcement officers like you would any other witness? And I said at one point, I did a series of rules that you're supposed to use to evaluate the testimony of the witness. So, can you assure me that you will evaluate things in this case solely based on the law and the evidence?
>
> PROSPECTIVE JUROR [18]: Yes.

(Doc. 12, Ex. 7, pp. 231-37.)

After prospective juror 18 made these statements, defense counsel addressed the panel and questioned prospective juror 37:

> [DEFENSE COUNSEL]: [ ] Mr. Lawrence is an African American. During the course of this trial, you will also learn that there are a number of witnesses who are African Americans. There is a gentleman who will testify, who actually was shot, who is an African American, and there was a person involved in a series of events who died, who was an African American.
>
> And that's just one of those facts that's just out there. It's part of this case. And it is a concern, obviously, as to whether or not anyone in their life experiences or otherwise, could not be fair and impartial in listening to the evidence and the testimony in this case regarding these events because of the involvement of witnesses who are African Americans, or people who may have been shot who are African Americans.
>
> And it's a tough question to ask. It's a hard question to answer, but we've got to know. If anybody feels that that's going to be a problem sitting as a juror in this case, we need to know now. Anyone? [Prospective juror 37]?
>
> PROSPECTIVE JUROR [37]: To some extent, I will do the best I can, but I agree with what he says. I do understand the race issue with Mr. Lawrence, but, again, I will do the best I can.
>
> THE COURT: Okay. [Prospective juror 37], I ask you the same questions that I asked [Prospective juror 18] then. We don't expect you to leave your common sense at the door. We don't expect you to not have lived the life that you have lived. But at the same time you can't use a different standard than everybody else in the room because you're an African American male instead of a Caucasian male, or female, or African American female.
>
> PROSPECTIVE JUROR [37]: I understand.

> THE COURT: So can you assure me that you can decide this case solely based on the law as I give it to you and the evidence introduced in this courtroom?
>
> PROSPECTIVE JUROR [37]: Yes, I can.

(*Id.*, pp. 240-42.)

In addition, prospective juror 37 was questioned about his ability to follow the law of principals.[1] In giving an example applying the law of principals, the prosecutor stated that a getaway driver in a bank robbery could be guilty of murder if a co-conspirator went into the bank and shot someone. Another venireperson, prospective juror 48, stated that she "[had] a problem with" the law, stating, "The guy in the car might not be guilty of murder, because he didn't actually pull the trigger. The man who pulled the trigger is the one guilty." (*Id.*, p. 203.) The prosecutor inquired further of the panel:

> PROSECUTOR]: [ ] Does anyone else feel like [prospective juror 48], anyone else? Yes, sir? [Prospective juror 37]?
>
> PROSPECTIVE JUROR [37]: I feel the same way. I agree with her, the guy who pulled the trigger, he's the one who's guilty.
>
> [PROSECUTOR]: Anyone else? We have lots of hands popping up now.
>
> THE COURT: So, [Prospective juror 37], if the law that I gave you says something else, could you follow the law that I gave you, or would you replace the law that I gave you with your own opinion?
>
> PROSPECTIVE JUROR [37]: I guess that depends on the situation. If the

---

[1] Florida's law of principals provides:

Whoever commits any criminal offense against the state, whether felony or misdemeanor, or aids, abets, counsels, hires, or otherwise procures such offense to be committed, and such offense is committed or is attempted to be committed, is a principal in the first degree and may be charged, convicted, and punished as such, whether he or she is or is not actually or constructively present at the commission of such offense.

§ 777.011, Fla. Stat.

guy driving the car, if he didn't pull the trigger, then I don't feel like he's part of who killed him.

THE COURT: The question for potential jurors here is not whether they agree with the law. I can assure you that I don't always agree with the law, but that doesn't mean that I don't have to follow it in my job.

PROSPECTIVE JUROR [37]: Right, I'm going to follow it.

THE COURT: Okay. So, if the law was that the guy driving the car, if the evidence supported those facts, and the law that I gave you, and this is a hypothetical question, but if the evidence supported those facts and the law that I gave you essentially demonstrated that the person driving the car was just as guilty as the person pulling the trigger, would you be able to follow that law, or would you disregard it and say I don't agree with it so I'm ignoring it?

PROSPECTIVE JUROR [37]: I guess I could follow it. I wouldn't ignore it.

THE COURT: Okay. And I'm not trying to be clever here, but this is something that you all really need to address. It is truly not a matter of whether you agree with the law. The law is written by the Legislature in Tallahassee.

The law will be given to you along with instructions that you can take back to the jury room after I read them. But it is essential that the people who are selected to sit on the jury, can assure us that they will follow that law, even if they think it's odd or peculiar. They'd write it a different way. Like I said, there are lots I'd write a different way, but nobody has asked me to do that job.

PROSPECTIVE JUROR [37]: I can follow it.

THE COURT: Okay. So, will you follow the law as I give it to you whether you agree with it personally or not, sir?

PROSPECTIVE JUROR [37]: Yes, ma'am.

(*Id.*, pp. 204-06.)

A court faced with a *Batson* challenge engages in a three-step analysis to determine whether the strike is permissible:

(1) the defendant must establish a prima facie case to support an inference

of purposeful discrimination; (2) if a prima facie case is established, the prosecutor must provide race-neutral reasons for the strike; and (3) the trial court then has "the duty to determine if the defendant has established purposeful discrimination."

*Taylor v. Culliver*, 638 Fed. App'x 809, 814 (11th Cir. 2015), *cert. denied*, 137 S.Ct. 494 (2016), *reh'g denied*, 137 S.Ct. 844 (2017) (citing *Batson*, 476 U.S. at 96-98).

After the defense objected to the state's proposed strikes, the prosecutor gave his asserted race-neutral reasons for the strikes and the trial court granted the strikes. Accordingly, the first element of the *Batson* inquiry is not at issue. *See Hernandez v. New York*, 500 U.S. 352, 359 (1991) ("Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot.")

However, Lawrence argues that the prosecutor's reasons for seeking to strike prospective jurors 18 and 37 were not race-neutral, thus failing the second part of the *Batson* inquiry. The prosecutor gave his reasons for seeking to strike prospective juror 18:

> THE COURT: Okay. You've made timely objections, and you've requested reasons for the strike. Racial group: That is African American male. I'm going to think this through. Both sides can have their time. Go ahead, [prosecutor], you're first.
>
> [PROSECUTOR]: Judge, he said since he is black and the Defendant is black, he's not sure if he can be objective and judge the facts. He may be intuitive, which means to me going outside of the facts and the law and making his decision. I'm not sure how much that would be a part of the decision-making process. He wanted to be fair to us.
>
> You indicated he said he could be fair. Perhaps, not enough to be cause,[2] but I indicated that I had great concerns that he was going to be bringing in

---

[2] The trial court rejected the prosecution's cause challenges to prospective jurors 18 and 37.

> his shoes [sic] into the decision-making process that are not appropriate.
>
> He brought that up and the Defense questioned him. That is race-neutral. If he was a white person making those same statements, it wouldn't make any difference. The fact that an African American is making those statements, shouldn't make any difference. Race is not an issue in this particular case.
>
> He's indicated that race may become an issue. He may not go purely objectively on the facts, and go outside of that, which he is not supposed to do.

(Doc. 12, Ex. 7, pp. 253-55.)

The prosecutor also explained his reasons for seeking to strike prospective juror 37:

> THE COURT: Okay. So at this time the objection to [prospective juror 37] as an African American male. [Prosecutor], go ahead and put it on the record again your reasons for the strike.
>
> [PROSECUTOR]: Judge, he said that he adopted everything [prospective juror 18] said, which was intuitive. He said he can't put the race issue behind him. Will do the best he can, but because the Defendant is black he's going to have problems in those kind of decision-making processes ignoring race as an issue. And since he adopted everything [prospective juror 18] said, plus added to it, those are my race-neutral reasons.

(*Id.*, pp. 260-61.) The prosecutor added that prospective juror 37 was "the one that had a problem with the law, following the law, as regards to principals. He had a problem with that as well." (*Id.*, p. 262.)

The record supports the conclusion that the prosecutor provided a race-neutral reason for the strikes in accordance with *Batson*. The state must be "clear and reasonably specific" in providing "legitimate reasons" for using its peremptory strikes. *Batson*, 476 U.S. at 98 n.20. However, "[t]he reason given [by the prosecutor] need not be a good reason; it can be irrational, silly, implausible, or superstitious, as long as it is facially race-neutral." *United States v. Lovett*, 662 Fed. App'x 838, 844 (11th Cir. 2016) (citing *United States v.*

Page 13 of 20

*Hill*, 643 F.3d 807, 837 (11th Cir. 2011)).  *See also Hernandez*, 500 U.S. at 360 ("At [the second] step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral."); *United States v. Walker*, 490 F.3d 1282, 1293 (11th Cir. 2007) ("Under *Batson*, almost any plausible reason can satisfy the striking party's burden, as long as the reason is race . . . neutral.").

The prosecutor believed that the two prospective jurors would not be able to consider the case based solely on the evidence and the law.  The prosecutor specifically noted that prospective juror 18 said he was "intuitive." The prosecutor stated that prospective juror 37 agreed with prospective juror 18 and also expressed hesitation about following the law of principals. Lawrence fails to establish that the potential inability to decide the case based on the evidence presented and in accordance with the applicable law is not "facially race-neutral."  *Lovett*, 662 Fed. App'x at 844.  Thus, the record supports the conclusion that the prosecutor provided race-neutral rationales for seeking to strike the two prospective jurors, and the state court did not err in rejecting Lawrence's claim based upon this step in the *Batson* inquiry.

Under the third *Batson* element, the state court was required to determine whether Lawrence had established purposeful discrimination by the prosecutor in moving to strike prospective jurors 18 and 37.  Lawrence argues that the state court unreasonably applied *Batson*, and that the trial court abused its discretion in "making a credibility determination of an allegedly race neutral reason given by the State."  (Doc. 1, p. 9.)

After the prosecutor provided his reasons for seeking to strike prospective juror 18, defense counsel argued:

> [Prospective juror 18] indicated that he felt the way he did because of his race. And he shared with us the fact that he could not divorce himself of the experiences that he's had as a black person, and that he was going to analyze things from that perspective. And because of that, I don't see how it can be race-neutral.

(Doc. 12 , Ex. 7, p. 255.)

The trial court then granted the strike of prospective juror 18:

> THE COURT: Well, the subject and his view of things would involve race, they're correct. But the problem that he said that he would have; that is, he would take his experience. Had he not volunteered, you would have been off on that.
>
> I want Mr. Lawrence to have a panel that has some African American jurors on it. Now, I know it's not quite as important as some people might argue in the case in which there's a white victim and an African American Defendant. Particularly, with some of the prejudice that is in our society.
>
> However, in this analysis I'm supposed to look at whether [the prosecutor's] reason is a reason that a lawyer in selecting a jury would pick as the kind of thing as a reasonable basis for striking someone.
>
> I think just because some of [prospective juror 18's] thoughts relate to his race, do not mean that he is being stricken because he's an African American. He was exceptionally honest. I imagine as honest or more honest than anybody in that group. And because he was, he made a record that puts us all in a difficult position right now.
>
> . . .
>
> Based on [prospective juror 18's] comments regarding some uncertainty that he had about how he would judge it intuitively. I mean, I really respected the man. He was trying to be very honest in sharing with you, [defense counsel], all the things that might come into play in deciding this case.
>
> I'll find that those are legally-sufficient reasons that are race-neutral as considered by the law for a challenge. And I will grant the challenge.

(*Id.*, pp. 255-58.)

Defense counsel also argued against striking prospective juror 37, stating:

> I don't recall that he adopted everything [prospective juror 18] said. I think

> he indicated that basically that he was in agreement with [prospective juror 18] to some extent, to the fact that he was black, that he had life experiences et cetera that would honestly become part and parcel of his thinking in this case.

(*Id.*, p. 261.) Counsel asserted that the prosecutor sought to exclude prospective juror 37 because of his personal beliefs stemming from his experiences as a black individual, and argued that this was not a race-neutral reason. (*Id.*)

> After hearing from the parties, the court granted the strike of prospective juror 37:
>
> THE COURT: He did eventually say that he would agree to follow that law [of principals], but the basis for which he was finding problems with having to do that originally, was very similar to [prospective juror 48] that we struck for that reason.
>
> Okay. I repeat, I was thinking it was wonderful if Mr. Lawrence had a jury that mostly African Americans, but I am not here to judge whether I would like a person on the jury or not. I would be happy to have all these gentlemen that have been stricken, but that's not the issue.
>
> And I don't think, by the State law, that it means that lawyers can no longer evaluate witnesses on other qualities if they are African American and the challenge is based on that racial question.
>
> So, I will grant the preempt. . . . He clearly didn't like the law about the bank robber and the other robber who was out in the car. He didn't want to follow that and that's the kind of issue that, whatever race somebody is, a neutral point for a peremptory challenge.

(*Id.*, pp. 262-63.)

> The court further addressed the challenges to both prospective jurors 18 and 37:
>
> Let me be clear, I'd rather [prospective juror 37] was on this jury. I would rather [prospective juror 18] was on this jury. It would be great for me if [prospective juror 13][3] was on this jury. The question is not, though, whether I think it would be nice if they were on this jury.

---

[3] Prospective juror 13 was another black prospective juror whom the State challenged with a peremptory strike. Lawrence does not challenge the strike of prospective juror 13.

> The question is whether [the prosecutor] has laid a sufficient legal record. I think that I am very forceful with the State on those issues. Particularly, when I have any question about whether it is essentially racially motivated.
>
> These questions, well [prospective juror 18] particularly, because [prospective juror 37] does have a separate issue, are difficult issues because [prospective juror 18] was using powers of observation and stemming from his thought process that are things that are to be considered by the State.
>
> I don't think the case law means that if [prospective juror 18] says I may look at this differently because I am a black man, that that means he can't be challenged. I don't think that's what the law means.

(*Id.*, pp. 263-65.)

To obtain federal habeas relief on the third step of the *Batson* analysis, Lawrence must show that the state court unreasonably applied *Batson* by failing to consider all relevant circumstances in reaching its conclusion, or, if the state court reasonably applied *Batson*, by showing that the state court unreasonably determined the facts:

> [W]e have held a state court unreasonably applies *Batson*'s third-step under § 2254(d)(1) when it does "not consider 'all relevant circumstances' in its analysis of the trial court's ruling." *McGahee*, 560 F.3d at 1261; *see also id.* at 1264. If the state court does not unreasonably apply federal law at *Batson*'s third-step–that is, the state court "confront[s] the decisive question and evaluate[s] the credibility of the prosecution's explanation, in light of all evidence with a bearing on it," *Parker v. Allen*, 565 F.3d 1258, 1270 (11th Cir. 2009) (quotation marks and citation omitted)–the petitioner may obtain relief only by showing that the state court's conclusion was an unreasonable determination of the facts under § 2254(d)(2). *See id.* at 1271.

*Brannan v. GDCP Warden*, 541 Fed. App'x 901, 904 (11th Cir. 2013). Lawrence bears the burden of showing purposeful discrimination. *See Purkett v. Elem*, 514 U.S. 765, 768 (1995) ("[T]he ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike."); *Adkins v. Warden, Holman CF*, 710 F.3d 1241, 1250 (11th Cir. 2013) ("[I]t is a defendant's burden to prove purposeful discrimination

at *Batson*'s third step.") (citations omitted).

In reaching its determination at the third step of *Batson*, the state court was required to consider all relevant circumstances. *See id.* at 1252 ("Because courts must weigh the defendant's evidence [of purposeful discrimination] against the prosecutor's articulation of a neutral explanation, courts are directed by *Batson* to consider all relevant circumstances in the third step of the *Batson* analysis. Failure to do so is an unreasonable application of *Batson* within the meaning of § 2254(d)(1).") (internal quotation marks and citation omitted).

Lawrence does not show that the state court unreasonably applied *Batson*. The court considered the prospective jurors' *voir dire* statements, the prosecutor's rationale for the strikes, and defense counsel's arguments in analyzing and evaluating the propriety of the strikes. The court also noted that the State accepted two black jurors. (Doc. 12, Ex. 7, pp. 257, 266.)

Furthermore, with respect to prospective juror 37, when defense counsel argued that the law of principals might not apply in this case, the court stated it did not "have a problem" with his being questioned about principals during *voir dire* "having sat through the first trial." (*Id.*, p. 264.)[4] Thus, the court considered whether the reason asserted by the prosecutor was relevant to the case. Additionally, the court noted that although prospective juror 37 "eventually" said he would agree to follow the law of principals, "the basis for which he was finding problems with having to do that originally, was very similar to [prospective juror 48] that we struck for that reason." (*Id.*, p. 262.) The court therefore noted that the prosecutor's reason was applied to another prospective juror, and there is no indication

---

[4] Lawrence's first trial ended in a mistrial. (*See* Doc. 12, Ex. 25, p. 271.)

from the record that this other prospective juror was black. Lawrence does not identify any other relevant circumstances that the court failed to consider at this step of the inquiry.

In sum, the record supports a finding that the court considered all relevant circumstances in determining whether Lawrence demonstrated purposeful discrimination in light of the prosecutor's reasons for using the peremptory strikes. Accordingly, he fails to show that the state court unreasonably applied *Batson*.

Nor does Lawrence establish that the court unreasonably determined the facts in accepting the prosecutor's reasons and rejecting his allegation of purposeful discrimination. The trial court's findings in making its decision are entitled to deference. *See Batson*, 476 U.S. at 98 n. 21 ("Since the trial judge's findings . . . largely will turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference."); *Adkins*, 710 F.3d at 1251 ("A federal habeas court must presume the [state] court's factual findings to be sound unless [the petitioner] rebuts the presumption of correctness by clear and convincing evidence.") (internal quotation marks and citation omitted). Although Lawrence asserts that the trial court abused its discretion, he has not explained how this is so or detailed any basis upon which to conclude that the court unreasonably determined the facts. He has not rebutted the presumption of correctness by clear and convincing evidence.

Accordingly, Lawrence does not show that the state court's decision rejecting his claim resulted in an unreasonable application of *Batson* or was based on an unreasonable determination of the facts. Lawrence is not entitled to relief on Ground Two.

It is therefore

**ORDERED** that Lawrence's petition (Doc. 1) is **DENIED**. The Clerk is directed to

enter judgment against Lawrence and to close this case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED

It is **ORDERED** that Lawrence is not entitled to a certificate of appealability (COA). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Lawrence "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Lawrence has not made the requisite showing in these circumstances. Finally, because Lawrence is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**ORDERED** at Tampa, Florida, on July 21, 2017.

*/s/ Virginia M. Hernandez Covington*
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Omar Xavier Lawrence; Counsel of Record